

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 26, 2017**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| DAVID WAYNE PEARSON and § | CASE NO. 16-50248-rlj12 |
| JACQUELINE DEE PEARSON, § | |
| § | |
| Debtors. § | |

## MEMORANDUM OPINION

Creditor City Bank objects to the exemption claims of David and Jacqueline Pearson, the debtors, concerning four vehicles and a 170.44-acre farm that is out of a larger, 315.58-acre tract. The exemption claims are based on Texas law. The four vehicles are claimed under sections 42.001(a)(1)–(2) and 42.002(a)(3) of the Texas Property Code; the farmland is claimed as part of the Pearsons' rural homestead exemption under sections 41.001–.002 of the Texas Property Code and the Texas Constitution.

The Court sustains the Bank's objection to the exemption claim to the vehicles but denies its objection to the homestead claim. For the homestead, the Pearsons will be directed to specifically identify the 170.44 acres that they assert is their homestead.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## I.

The Pearsons live in a house that is located on a 4.22-acre tract that was surveyed out of a 320-acre tract (and thus creating the 315.58-acre tract). Neither the pleadings here nor the Pearsons' bankruptcy schedules of real property and of exemptions specifically identify the 170.44 acres, however. Their schedule of all real property in which they have an interest, Schedule A/B, identifies the 4.22 acres, with their house, with the legal description of Terry County, S/E corner of Section 16, Block X, having a value of $429,000.00; it then identifies the farm as consisting of 315.58 acres in Hockley/Terry County, 1/2 section of Section 16, Block X, Texas having a value of $455,000.00. The latter has the notation that "170.44 acres [are] unencumbered and exempted." Their homestead exemption, under Schedule C, identifies both such tracts with the same values and with the same notation that 170.44 acres are exempt. Debtors' Ex. B. This inadequately identifies the homestead claim. It appears to be limited to 170.44 acres, on which City Bank premises its objection, but attributes the same value as is for the 315.58 acres.

The four vehicles at issue are a 2013 Ford F-350, a 2015 Ford F-350, a 2012 Chevrolet Silverado, and a 2014 Polaris Ranger.

City Bank, as to the Pearsons, is a large, unsecured creditor claiming to be owed over $1.8 million. It contends that the four vehicles cannot be exempted because they have always, since the time of purchase of each vehicle, been under lease to the Pearsons' affiliated entities, Double P Farms, a partnership, and B&D Pearson Farms, LLC. The bank's objection to the Pearsons' homestead exemption is similar. City Bank contends that the Pearsons have abandoned any homestead claim to the 170.44 acres because the entirety of the farm, the 315.58 acres from which the 170.44 acres is derived, has been leased out to Double P Farms without interruption for several

years and will continue to be under lease with Double P Farms for the foreseeable future.

The parties have no real factual dispute concerning the vehicles. The question here is whether, in light of the vehicles having always been leased out, they can still be exempt. The Court will return to this question; it first addresses the facts concerning the homestead claim.

David Pearson and his previous wife, Tonette Pearson, purchased the 320-acre farm in May 2003. David Pearson had previously farmed the 320 acres under a crop-share lease with the prior owners. At the time that David and Tonette purchased the farm, they were living in Levelland, Texas. David Pearson testified that he and Tonette moved to the farm in November 2003, and that he put-in a crop for the 2003 crop year. The Pearsons also installed an irrigation system shortly after acquiring the farm. Then, in 2004, Double P Farms started farming the land under an oral lease with the Pearsons. To this date, the Pearsons (David and either Tonette or Jacqueline) and Double P Farms have never entered into a written lease agreement. Double P Farms is a partnership that was formed in 2004 between David and his father, Bobby Pearson. David Pearson further testified that he and Jacqueline are, together, presently 50% owners of Double P Farms, with Bobby Pearson owning the other 50%.

David and Tonette divorced in 2006; he and Jacqueline married in 2007.

Double P Farms has continuously farmed the 320 acres since 2004. The Pearsons intend to continue to lease-out the land to Double P Farms for the foreseeable future.

David Pearson has moved around a bit, but he and Jacqueline have resided at their house on the 4.22 acres since late 2010, early 2011.

In March 2010, David Pearson and Bobby Pearson, *on behalf of Double P Farms and B&D Pearson Farms, LLC*, signed a deed of trust in favor of Lone Star State Bank to secure loans made by Lone Star. The deed of trust purports to cover the entire 320-acre tract at issue here and a second tract described as Labors 8 and 9, League 16, of the Howard County School Lands, Hockley

County, Texas. David Pearson testified that the latter tract was his father's. The validity of this deed of trust is questionable.

In October 2006, David Pearson, as a single person, purchased a home on 10.3 acres in Hockley County, Texas. This property is not part of the 320-acre tract but, according to David Pearson, is rural. He and Jacqueline built a barn on the property in October 2008.

Tonette Pearson conveyed her interest in the 320-acre tract to David in June 2008.

The Pearsons, David and Jacqueline, lived on the 10.3 acres at least from the time of their marriage until they moved to a house on the farm (somewhere on the 320 acres). They built a new home on the 4.22 acres, beginning in October 2011. It was completed sometime in 2012. By a "Designation of Homestead and Affidavit of Nonhomestead" dated November 10, 2011, David and Jacqueline stated that their homestead property was located on Labors 8 and 9, League 16, of Howard County School Lands, Hockley County, Texas, and that their non-homestead property was the 4.22-acre tract of land out of the 320 acres of the South portion of Section 16, Block X, Public School Land, Terry County, Texas. City Bank's Ex. 21. This instrument was issued for the lender American State Bank. It recites that the Pearsons, as "Affiant" under the instrument, have "never, do[] not now and do[] not intend ever to reside on, use in any manner, or claim [the] nonhomestead property as a business or residence homestead. [The Pearsons] disclaim[] all homestead right, interest, and exemption related to the nonhomestead property." *Id*.

The portion of the 320-acre tract that is farmed, the approximate 315 acres (the 320 acres less the 4.22-acre tract where the Pearsons' house sits), has been continually used as farmland under a lease with Double P Farms since 2004. As stated above, there has never been a written lease agreement to memorialize this arrangement, however.

**II.**

A debtor in bankruptcy has the option to choose either the bankruptcy exemptions of

4

§ 522(d) or that of the controlling state and federal nonbankruptcy law. 11 U.S.C. § 522(b). The Pearsons elected the latter. Debtors' Ex. B. The Court will thus look to the exemption laws of Texas to determine the propriety of the debtors' elections. *In re Crump*, 533 B.R. 567, 571 (Bankr. N.D. Tex. 2015).

### A.

Texas homestead protections are in place to protect the family's home and its means for survival. *See Foust v. Sanger*, 13 Tex. Civ. App. 410, 412 (1896, writ ref'd); *see also Bradley v. Pac. Sw. Bank, FSB (In re Bradley)*, 960 F.2d 502, 505 (5th Cir. 1992) (quoting *Franklin v. Coffee*, 18 Tex. 413, 415–16 (1857)) ("As it did in the dawning days of the state, the homestead exemption in Texas continues to 'protect citizens and their families from the miseries and dangers of destitution.'"). Homesteads can be either urban or rural. *Id*. at 506. There is no dispute that the farm qualifies as rural property. The Texas Constitution permits rural homestead rights to a family of up to 200 acres of land, in one or more parcels. Tex. Const. art. XVI, § 51. The Texas Property Code further limits the designation to 100 acres for a single, adult person. Tex. Prop. Code § 41.002(b).

In a homestead dispute, the claimant must first show that the property in question has been established as a homestead. *Perry v. Dearing (In re Perry)*, 345 F.3d 303, 311 (5th Cir. 2003). This is accomplished through evidence of overt acts of homestead usage and a demonstrated intent to claim the property as a homestead. *Bradley*, 960 F.2d at 507. This is a "short hurdle" for the claimant to clear. *Id*. The burden then shifts to the objecting party to show that the homestead rights have been terminated. *Perry*, 345 F.3d at 311. Termination can only occur through death, abandonment, or alienation. *Id.* at 310. The ultimate burden lies with the objecting party to prove that "the exemptions are not properly claimed." Bankruptcy Rule 4003(c); *In re Baker*, 307 B.R. 860, 862–63 (Bankr. N.D. Tex. 2003). Until termination is proved, it is presumed that the

5

claimant's homestead rights continue. *Wilcox v. Marriott*, 103 S.W.3d 469, 472 (Tex. App.—San Antonio 2003, pet. denied). In Texas, "homesteads are favorites of the law." *Bradley*, 960 F.2d at 507. When presented with difficult homestead issues, courts are directed to apply homestead protections liberally. *Id*.

The Pearsons seek to exempt 170.44 acres out of 315.58 acres of farmland described as "Hockey/Terry County ½ section of Section 16 Block X, Texas" as part of their rural homestead. As noted, the 315.58 acres has been leased to Double P Farms continuously since 2004.

The Pearsons bear the initial burden to establish homestead rights in the farm. David and Tonette Pearson purchased the 320 acres in May 2003 from Weldon and Novella Mason. Prior to the purchase, David had been farming the land under a crop-share arrangement with the Masons. He put a crop in for the 2003 crop year, as well. In late fall 2003, he and Tonette moved into a house on the property and proceeded to install an expensive irrigation system. These acts alone are sufficient to establish the homestead character of up to 200 acres of the farm to David Pearson. *See Crump*, 533 B.R. at 572; *see also Bradley*, 960 F.2d at 508 ("The Texas courts have routinely held that use of property for farming or ranching purposes, accompanied by occupancy of the property, is sufficient to imbue the property with a homestead character."); *First Interstate Bank of Bedford v. Bland*, 810 S.W.2d 277, 286 (Tex. App.—Fort Worth 1991, no writ) ("Possession and use of land by one who owns it and who resides upon it makes it the homestead in law and in fact."). The Pearsons have cleared this short hurdle.

The burden now shifts to City Bank; the bank must establish that the debtors' homestead rights in the farm have been terminated. City Bank does not allege death or alienation, thus all arguments concern abandonment: (1) the lease is not "temporary"; (2) the Pearsons' overt acts constitute abandonment; and (3) at most, the Pearsons can only claim the 100 acres permitted for a single person. *City Bank's Brief in Support of Its Objection to Debtor's (sic) Claimed Exemptions*

(City Bank's Brief), Doc. No. 67 at 7–11.

Abandonment of an established homestead "requires cessation or discontinuance of the use of the property coupled with intent to abandon permanently the homestead." *Perry*, 345 F.3d at 310 n.8; *Long Bell Lumber Co. v. Miller*, 240 S.W.2d 405, 408 (Tex. Civ. App.—Amarillo 1951, no writ) ("[T]he party asserting the abandonment of a homestead has the burden of proving it by evidence undeniably clear and beyond almost the shadow—at least all reasonable ground of dispute." (internal quotation and citation omitted)).

**1.**

The bank's first and primary argument is that the lease to Double P Farms is not temporary. City Bank's Brief, Doc. No. 67 at 8. The Texas Constitution expressly allows *some* leasing of homestead property, providing that "any *temporary* renting of the homestead shall not change the character of the same." Tex. Const. art. XVI, § 51 (emphasis added).

To determine whether a lease is temporary or permanent for homestead purposes, courts in the Fifth Circuit look to *In re Perry*, 345 F.3d 303 (5th Cir. 2003). *Crump*, 533 B.R. at 573; *Norra v. Harris Cty. (In re Norra)*, 421 B.R. 782, 795 (Bankr. S.D. Tex. 2009). The first question is "whether, and if so, over what portions of property, [the claimant] released possession and control." *Perry*, 345 F.3d at 319; *see also Baker*, 307 B.R. at 863 (preserving homestead exemption claim despite debtor placing land in Conservation Reserve Program, because debtor still maintained possession and control for all purposes other than agriculture). Second is an inquiry into the claimant's "intent with respect to that portion of the property." *Perry*, 345 F.3d at 319. This second factor is dispositive: to rule that an established homestead is abandoned, the court must find that the owner intends to never resume control over the property at any point in the future. *Crump*, 533 B.R. at 573 ("[T]he Court finds that the dispositive factor in the *Perry* test is the owner's intent to resume control of the property."). Such an inquiry is a question of fact, and the party opposing the

homestead designation carries the burden. *Perry,* 345 F.3d at 319.

The Pearsons have rented the farm to Double P Farms continuously since 2004 and intend to continue leasing it for at least the next three years. Does such an arrangement qualify as "temporary" under Texas homestead law?

**2.**

The Court was recently presented with a similar challenge to a homestead exemption in the case of *In re Crump*, 533 B.R. 567 (Bankr. N.D. Tex. 2015). There, the Crumps sought to claim as exempt a rural homestead consisting of a four-acre lot on which they resided and a 160-acre tract of farmland nine miles away that was under both a surface lease to one party and saltwater disposal lease to another. *Id*. at 570. The trustee objected to the claimed exemption of the farmland. *Id*. at 569–70. Evidence showed the Crumps purchased and began farming the 160-acre tract in 1992. *Id.* at 570. They purchased and moved onto the four-acre property in 1997, but continued farming the larger tract until 2004. *Id*. At that point, Mr. Crump stopped farming and transitioned into work in the oil and gas industry. *Id*. In 2011, the Crumps entered into a five-year lease of the surface estate of the farmland that gave either party the option to cancel at the end of each year. *Id*. The saltwater disposal lease was a thirty-year lease, and only the petroleum company had the right to terminate the lease early. *Id*. at 574.

The Court first determined whether homestead status had been established and then whether such status had been abandoned by the Crumps. Homestead status was established by farming the land. *Id.* at 572 ("The act of farming the uninhabited land is a sufficient nexus to the inhabited property to constitute support of the family."). Turning to the more difficult question of abandonment, the Court drew from a Southern District of Texas case that applied the *Perry* test, *Norra v. Harris Cty. (In re Norra)*, 421 B.R. 782 (Bankr. S.D. Tex. 2009). *Norra*, like *Perry*, involved a debtor seeking to claim as part of her rural homestead two tracts used as mobile home

parks. *Id.* at 785. Purchased in the 1980s, Norra moved onto one of the tracts in 2005 and made it her residence. *Id.* at 786. Regarding that tract, the court first found that by living on part of the tract, Norra had established the property as a homestead. *Id.* Flipping the burdens, the court went through its abandonment analysis by applying *Perry* to determine whether the leases were temporary or permanent. *Id.* at 793–95. Looking first to control, the court found that Norra "continuously maintain[ed] possession and control over most of Reidland," the name of the property at issue. *Id.* at 797. The facts indicated that, although much of the property was leased, Norra "did not respect the privacy rights of her tenants" and "treated all the land upon which the mobile homes sat as her own." *Id.*

Moving to the next factor, intent, the court paid special attention to the permanency of the improvements erected upon the land and the length of the rental agreements. *Id.* at 798. A lack of intent to abandon is inferred for rural homesteads when the lessee's use of the property permits the land's reconversion to agricultural use "with minimal effort." *Id.* (referencing *Hollifield v. Hilton*, 515 S.W.2d 717 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.). The improvements on Norra's property—mobile homes on concrete blocks, a septic tank, sewage system, and shared road—were all deemed to be easily removed, supporting Norra's intent to resume control. Norra had rented mobile homes on the property for over twenty years and was likely to continue renting them in the future—suggesting something more than a "temporary" lease. *Id.* But the previous cases "focused upon the temporary *nature* of the leases . . . not [their] overall duration." *Id.* (emphasis added). In Norra's case, the leases were month-to-month, which supported an intent to resume control, regardless of whether "the rental business has existed for over 20 years, instead of 5 years." *Id.*

After reviewing *Norra*, this Court concluded in *Crump* "that the dispositive factor in the *Perry* test is the owner's intent to resume control of the property." 533 B.R. at 573.

9

The surface farming lease and the saltwater disposal lease were then analyzed separately. *Id*. Three factors demonstrated the Crumps' desire to resume possession and control over the portion of the property leased for farming. First, while the lease term was five years, either party had the option to terminate the lease at the end of each year. *Id*. Second, no structures were erected and the land was preserved for agricultural use. *Id*. at 574. And third, the Crumps owned various farming implements that they maintained possession of throughout the lease. *Id*. Taken together, the evidence suggested that the Crumps' farming hiatus was only temporary and the trustee's objection to the homestead exemption was denied. *Id*.

The outcome was different for the saltwater disposal lease. As part of the lease, the Crumps conveyed to the lessee the "the right to build, install and maintain . . . storage tanks, pumps and other machinery and equipment." *Id*. The nature of the property was thus being permanently transformed away from agricultural use. More important, the lease term was thirty years and only the lessee had the right to surrender the lease before the end of the term. *Id*. The alteration of the property and the permanent nature of the lease exhibited an intent by the Crumps to abandon that portion of the property as their homestead. The Court ruled accordingly.

The Court, mindful of *Norra* and *Crump*, must determine whether the Pearsons' lease to Double P Farms is temporary or permanent. The Court will first look at the degree of control the Pearsons retain over the entire farm. Next, the Court will gauge whether the Pearsons intend to regain possession and control of the farm at some point in the future. Beyond the testimony, the Court will infer intent from such factors as the difficulty to return the farm to its pre-lease state and the temporal nature of the lease. *See Crump*, 533 B.R. at 573–74; *Norra*, 421 B.R. at 798; *Hollifield v. Hilton*, 515 S.W.2d 717, 721 (Tex. Civ. App.—Fort Worth 1974, writ ref'd n.r.e.).

### a. Control

The first factor is a bit counter-intuitive in this case. David Pearson testified that he goes

onto the farm nearly every day. The Court finds, however, that the Pearsons have not had possession or control of the farm since the spring of 2004 when David Pearson leased it to Double P Farms.

The lease to Double P Farms, though oral, is valid. A lease for over a year is not enforceable unless reduced to writing. Tex. Bus. & Com. Code § 26.01. The lease to Double P Farms is characterized by the Pearsons as an oral, year-to-year lease. An oral, one-year lease is not subject to the statute of frauds and is thus valid without a writing. *McDonald v. Roemer*, 505 S.W.2d 698, 699 (Tex. Civ. App.—San Antonio 1974, no writ). At the end of the year (and at the end of each subsequent year), the continued possession by Double P Farms without an objection from the Pearsons simply renewed the one-year lease under its original terms. *See Bateman v. Maddox*, 86 Tex. 546, 554 (1894). Though specific terms of the lease were not presented to the Court, "one of the essentials of a valid leasing of premises . . . is that exclusive possession of the premises rightfully belonging to one party is transferred to another." *Brown v. Johnson*, 118 Tex. 143, 147–48 (1929).[1]

When David Pearson enters the farm, he does so as a representative of Double P Farms, a general partnership. "Partnership property is not property of the partners." Tex. Bus. Orgs. Code § 152.101. Double P Farms farms the land, which does not support *the Pearsons*' homestead claim. *See In re Cooper*, 128 B.R. 632, 636–37 (Bankr. E.D. Tex. 1991) (denying homestead protection for an office property purchased by the debtor but rented to a corporate entity, of which the debtor was director and sole stockholder). The Pearsons have thus relinquished exclusive possession and

---

[1] *See also Tossow v. Tex.*, No. 03-02-00308, 2003 WL 738331, at *2 (Tex. App.—Austin March 6, 2003, no pet.) ("Tenancy implies a right of possession in the tenant exclusive even of the landlord. The right of exclusive possession is one of the essential elements of tenancy." (internal citations omitted)); *Brooks v. Blue Ridge Ins. Co.*, 677 S.W.2d 646, at 649, 652 (Tex. App.—Amarillo 1984, writ ref'd n.r.e.) (describing "exclusive possession of the property" as "one of the constituting and essential elements of tenancy" (internal quotation and punctuation marks omitted)); *and see L-M-S Inc. v. Blackwell*, 149 Tex. 348, 353–54 (1950) ("It is now generally accepted that every lease of land, in the absence of express language to the contrary, raises an implied covenant that the lessee shall have the quiet and peaceful enjoyment of the leased premises.").

control of the property since 2004, with stated plans to continue the current arrangement for at least the next three years. This factor supports the termination of the debtors' homestead rights in the farm.

### b. Intent

But intent is the dispositive factor of this test. Only if the Pearsons intend to never regain possession and control of the farm will their homestead rights terminate. *W. Tex. State Bank of Snyder v. Helms*, 326 S.W.2d 47, 49 (Tex. Civ. App.—Eastland 1959, no writ) ("[A]bandonment is not shown by going away without an intention to return at some particular time, but by going away with the definite intention never to return at all." (internal quotation and citation omitted)); *see also In re Leonard*, 194 B.R. 807, 811 (Bankr. N.D. Tex. 1996) ("[T]he deciding factor in determining whether homestead rights have been retained or abandoned is the intent of the homestead claimant."); *West v. Austin Nat'l Bank*, 427 S.W.2d 906, 911–12 (Tex. Civ. App.—San Antonio 1968, writ ref'd n.r.e.) ("Where a homestead claimant moves from property which has been previously impressed with the homestead character, the question of whether such property constitutes a homestead is dependent primarily on the intention of the claimant."); *El Paso v. Long*, 209 S.W.2d 950, 954 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) ("The ultimate question to be resolved is as to whether claimant intended to resume the possession of the premises as a homestead." (citations omitted)).

After reviewing the evidence, the Court finds that the Pearsons intend to resume control of the farm at some point in the future. First, the land itself has not been altered in any permanent way since the lease began in 2004. No structures have been erected and, like in *Crump*, the property has been preserved for agricultural use. Next, the *nature* of the lease also evinces an intent to return. While the lease has run continuously since 2004, it has done so through a series of one-year renewals. In *Crump*, it was the fact that the five-year lease could be cancelled at the end of each

year that was important. *Crump*, 533 B.R. at 573–74. In *Norra*, though the properties had been leased for over twenty years, each was a series of recurring month-to-month leases. *Norra,* 421 B.R. at 798. The overall duration of the lease is not the focus, and, in this case, the inference to be drawn is that this is a temporary lease that does not warrant a finding of abandonment.

This conclusion is supported by the overt acts and testimony of the Pearsons. In 2012, the Pearsons sold the Levelland house and moved back to the farm on an adjoining tract. David Pearson credibly testified that once his father retires from farming, it is their intent to terminate the partnership and the lease and thus regain personal control and possession of the land. The lease of the farm to Double P Farms is temporary.

### 3.

The bank also argues that the Pearsons are estopped from claiming the farm as their homestead because of representations made in a deed of trust and a declaration of homestead. The deed of trust, which covers the farm and other land, was signed in 2010 by David Pearson and his father *as owners of* Double P Farms and B & D Pearson Farms; the homestead designation was signed by the Pearsons in 2011 for the benefit of American State Bank, which apparently provided the funds for the construction of the Pearsons' home on the 4.22 acres adjoining the farm. City Bank's Exs. 16 and 21. The document designates the Pearsons' homestead as "[a]ll of Labors Eight (8) and Nine (9), League Sixteen (16), Howard County School Lands, Hockley County, Texas" and disclaims as their homestead the 4.22 acres where the Pearsons now reside.[2] City Bank's Ex. 21. These instruments are, to say the least, curious. There is no evidence that Double P Farms ever *owned* the farm; and there is no evidence that David Pearson owns an interest in Labors 8 and 9. And the evidence is clear, and not disputed by the bank, that the Pearsons live on the 4.22 acres.

---

[2] The bank makes no argument that such disclaimer estops the Pearsons from claiming the four-acre tract as their homestead.

13

Neither instrument jeopardizes the farm's homestead status. Any claim of estoppel requires a showing of reliance on the statement by the moving party. *See Julian v. Fed. Deposit Ins. Corp. (In re Julian)*, 163 B.R. 478, 482–83 (Bankr. N.D. Tex. 1994); *see also Dillon v. Rogers*, 596 F.3d 260, 270 (5th Cir. 2010); *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979) ("Essential to the creation of estoppel is that the misrepresentation be communicated to, believed, and relied upon by the innocent party."). The parties to whom such statements were made are not before the Court, and no evidence was presented beyond the documents themselves.

**4.**

Next, the bank attempts to limit the Pearsons' homestead designation of the farm to only that allowed for a single person—or 100 acres total. The bank argues that even if a family homestead was originally established in 2003, David Pearson's divorce in 2006 abandoned his interest in the full family homestead exemption of 200 acres. And because the farm has been rented out continuously since David regained family status by marrying Jacqueline, the Pearsons have been unable to enter the farm and re-establish it as a family homestead.

On the surface, this argument makes sense. Texas statutes allow a rural family 200 acres, but a single person is allowed only 100 acres. Tex. Prop. Code § 41.002(b). David Pearson *was* single while the farm was rented to Double P Farms. The farm has remained leased continuously since David and Jacqueline married. If the divorce did have the effect of reducing David's homestead claim to 100 acres, the continuous leasing would arguably prevent the Pearsons from re-establishing the rest as a homestead. *See, e.g., In re Webb*, 263 B.R. 788, 795 (Bankr. W.D. Tex. 2001) ("[M]ere use of the rental proceeds as income, or 'support,' without any other use of the property 'for the purposes of a home,' is insufficient to qualify it as a rural homestead.").

The burden remains with the bank. The bank provided no caselaw to support its theory that

14

a rural family homestead exemption is reduced to 100 acres upon divorce.[3] The Court could find no cases to directly refute or support the bank's position. There is, however, relevant caselaw to establish the necessary framework to resolve the issue. Spouses, as part of a family homestead, each own an undivided homestead interest in the *entire* property. *Hankins v. Harris*, 500 S.W.3d 140, 147 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Fairfield Fin. Grp., Inc. v. Synnott*, 300 S.W.3d 316, 323 (Tex. App.—Austin 2009, no pet.). A divorce does not destroy the protection of an established homestead or place the burden back on the claimant. *Marincasiu v. Drilling*, 441 S.W.3d 551, 561 (Tex. App.—El Paso 2014, pet. denied). Divorce is simply a factor that the objecting party may use to prove abandonment. *Id*. The burden thus remains with the bank to prove abandonment through competent evidence. *Hankins*, 500 S.W.3d at 145.

Here there is not sufficient evidence to prove abandonment. There is no divorce decree or separation agreement before the Court. *See, e.g., Hankins*, 500 S.W.3d at 146–47 (distinguishing effects of divorce on homestead rights through different divorce agreements). There is no marriage certificate for David and Jacqueline. The Court can only rely on the testimony that David and Tonette divorced in 2006 and David married Jacqueline in 2007. The missing details of the gap here are significant. When did Tonette leave the farm? *Salomon v. Lesay*, 369 S.W.3d 540, 555 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("[S]o long as real property is a family homestead by virtue of one spouse's intention and use, that property is protected by the homestead exemption,

---

[3] The bank did cite to two cases, neither of which directly support its argument. First is the previously cited case, *In re Julian*, 163 B.R. 478, 483 (Bankr. N.D. Tex. 1994). There the debtor sought an exemption for two adjoining lots used to sell cars. The debtor built and moved into a residence on one of the lots. The other had been continuously rented to others. The debtor executed a deed of trust on both properties. The homestead claim on the lot with the residence was upheld and the claim on the leased lot denied because the debtor—from the purchase of the property through the execution of the deed of trust—never established that lot as a homestead. The second case, *Yates v. Home Bldg. & Loan Co.*, is an older case in which the debtors built a new home on the same lot as their existing homestead and immediately rented it out. 103 S.W.2d 1081 (Tex. Civ. App.—Beaumont 1937, no writ). Both cases stand for the proposition that leased property cannot *become* a homestead of the lessor absent overt acts of homestead usage. Neither case stands for the proposition that a couple's divorce while property is leased changes its homestead character.

15

unless abandonment is pleaded and proved."). Tonette did not divest herself of her legal interest in the farm until June 10, 2008, well after David married Jacqueline. City Bank's Ex. 6. When did Jacqueline move-in with David, and did such an act establish a new family? *See PaineWebber, Inc. v. Murray*, 260 B.R. 815, 823–27 (E.D. Tex. 2001) (applying the *Roco* test to determine if the debtors were a "family" for purpose of rural homestead exemption).

For insight into the question, the Court can also look to analogous aspects of homestead law. For instance, if David's marriage to Tonette ended because of death instead of divorce, David would be entitled to keep the full 200-acre family homestead exemption as a single person. *Id.* at 825 ("Under Texas homestead law . . . the surviving spouse maintains the same homestead rights as both spouses had prior to the death of the other."). If, instead, the Pearsons sold the farm as part of the divorce, the full proceeds retain their exempt status for six months. *See* Tex. Prop. Code Ann. § 41.001(c); *Synnott*, 300 S.W.3d at 322. And, as discussed at length above, homestead claimants are free to surrender a present possessory interest through a lease for a significant period of time without sacrificing the homestead character of the property. Texas law thus looks favorably upon a family homestead once established and permits temporary periods of noncompliance. *See Bradley v. Pac. Sw. Bank, FSB (In re err)*, 960 F.2d 502, 508 n.8 (5th Cir. 1992) ("Once gained, homestead rights are not easily lost."). And of course, the longstanding rule in Texas is that homestead rights may only be lost through "death, abandonment, or alienation." *Perry*, 345 F.3d at 310; *Posey v. Commercial Nat'l Bank*, 55 S.W.2d 515, 517 (Tex. Comm'n App. 1932).

Still, this is undoubtedly one of those difficult fact situations concerning a homestead. Courts are to construe the homestead laws liberally in such a case. *Crump*, 533 B.R. at 576. In light of such mandate, and because the burden is on the bank to disprove homestead status, the Court concludes that the Pearsons' family homestead rights continued through the gap in marriages of David Pearson. The Court overrules the bank's objection to the Pearsons' claim of a homestead

exemption for the 170.44 acres.

## B.

The Pearsons seek to claim as exempt three pickup trucks and a UTV under Texas Property Code § 42.002(a)(3). Debtors' Ex. B. Such provision provides that "farming or ranching vehicles and implements" are exempt from garnishment, attachment, or execution. The bank objects to the exemption, asserting that because the vehicles were immediately and continuously leased to the farming entities, they are, as to the Pearsons, rental property and not farming vehicles. City Bank's Brief, Doc. No. 67 at 3–4. The Pearsons respond that, unlike § 42.002(a)(4), which exempts "tools . . . used in a trade or profession," the farming exemption does not require proof of usage. *Supplement to Brief in Support of Response to City Bank's Objection to Debtors' Claimed Exemptions*, Doc. No. 66 ¶ 11.

This objection presents another difficult issue. David Pearson testified that his intent at the time of purchase for each of these vehicles was to rent them to his farming entities. Each vehicle has been leased to said farming entities from the date of purchase through the filing of the bankruptcy petition, and the plan is to continue to lease each vehicle through the chapter 12 plans of the farming entities. The Pearsons have therefore never *personally* used these vehicles. This puts the vehicle exemption in sharp contrast to the homestead exemption. Because the vehicles were always rented, if this were a homestead situation, it is clear that they would not qualify as exempt. *See, e.g., Julian v. Fed. Deposit Ins. Corp. (In re Julian)*, 163 B.R. 478, 483 (Bankr. N.D. Tex. 1994); (denying homestead exemption for lot that had been leased from purchase through date of lien). But this is a personal property exemption, not a claim for a homestead, and the applicable standards are less well-defined.

The bank cites a case with a very similar fact situation, *In re Cooper*, 128 B.R. 632 (Bankr. E.D. Tex. 1991). There the debtor sought to exempt office equipment that the debtor purchased and

17

immediately and continuously leased to the debtor's corporate entity. *Id.* at 634. The equipment was leased on a month-to-month basis. *Id.* at 635. The court denied the exemption claim, finding that "[p]roperty whose initial character is that of rental property cannot be claimed as exempt." *Id.* at 637.

The Pearsons seek to distinguish the current situation by noting the exemption claimed here is different. The exemption in *Cooper* was under what is now § 42.002(a)(4), which exempts equipment *used* in a trade or profession. Interpreting the statute, courts thus subject claims under this subsection to a "use test" that inquires "whether the item is used with sufficient regularity to indicate an actual use by the debtor." *See In re White*, 234 B.R. 388, 389 (Bankr. W.D. Tex. 1999). There is no equivalent language in the subsection chosen here, which exempts "farming or ranching vehicles and implements." § 42.002(a)(3). Accordingly, courts apply this language literally. *See PaineWebber*, 260 B.R. at 832 ("With a dearth of case law on § 42.002(a)(3) and its predecessor to provide any guidance, the court sees no reason to reject a literal interpretation of that section . . . ."). This Court has done the same. *Crump*, 533 B.R. at 576 ("Unlike subsection (a)(3), subsection (a)(4) qualifies the exemption by how the property is used. . . . . [The farming implements'] nonuse, however, does not affect their character as farming implements; as farming implements, they satisfy the statutory requirement.").

This argument, however, misses a nuance of the "use test." The test asks whether the items are used "with sufficient regularity," not whether the debtors have ever used the items at all. In both *PaineWebber* and *Crump*, the debtors had little use of the equipment at the time of filing, but they had both previously used and established the items as farming implements. *See Crump*, 533 B.R. at 570 and 575–76 (finding no need to inquire into "present actual use" for farming implements not currently in use, but used to farm from 1992 through 2004); *PaineWebber*, 260 B.R. at 831 (rejecting request to "take into account the intensity" of debtor's past farming activities

where testimony showed that tractor and lawn mower were used for farming purposes). Thus, while there is no need to establish that the items are used "with sufficient regularity," the items still must be—in the hands of the claimant—"farming or ranching vehicles and implements."

At no point have the Pearsons personally used these vehicles for farming. In the Pearsons' hands, these vehicles are rental property. To rule otherwise would raise the same concern as in *Webb*, which denied a homestead exemption claim for property used to generate rental income. *In re Webb*, 263 B.R. 788 (Bankr. W.D. Tex. 2001). There the court stated, "[t]o follow the Debtors' logic would be to state a rule wherein a debtor could acquire dozens of rent houses, scattered throughout the state, and so long as each was situated on a rural tract and the aggregate acreage fit within the amounts allowed by law, each 'rent house' could be claimed as the debtor's 'homestead'." *Id.* at 795. Likewise, though the facts are less egregious here, the precedent set would allow anyone to carry a fleet of pickup trucks, rent them out to farmers, and claim them as exempt farming vehicles in bankruptcy. The bank's objection regarding the vehicles will be sustained.

### III.

The Bank's objection to the Pearsons' claim of exemption to the four vehicles is sustained; the Bank's objection to the homestead exemption is denied. The Pearsons will, however, be directed to amend their homestead claim to specifically identify what part of the 315.58 acres constitutes their 170.44-acre exemption. This shall be done within 20 days of entry of the Court's order on this matter.

### End of Memorandum Opinion ###